**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| PAULINA FLORES, | No. ED CV 04-890-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 21, 2004, seeking review of the Commissioner's termination of her Supplemental Security Income benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 19, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 10, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 9, 1953. [Administrative Record ("AR") at 110.]  She has a second grade education and past work experience stuffing inserts into newspapers and as an orange packer. [AR at 40-41, 176, 180-83.]

In 1990, plaintiff was found disabled as of December 4, 1989, and became entitled to disability benefits due to a severe genito-urinary impairment (renal failure status post kidney transplant and glomerulosclerosis) that met the criteria of Listing 6.02B of Appendix 1, Subpart P, of 20 C.F.R., Part 404.[1] [AR at 12; AR at 108.]  Following a hearing before a Disability Hearing Officer on July 21, 1999, however, it was determined that plaintiff's condition had improved sufficiently to enable her to work as of December 1, 1998, and that, therefore, her benefits would cease. [AR at 66-75; 131-140.]  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") [AR at 21], which was held on April 5, 2000. [AR at 36-61.]  Plaintiff appeared, without counsel, and testified on her own behalf.  Plaintiff's daughter Naomi also testified.  The ALJ found that plaintiff's condition had improved and that plaintiff had regained the residual functional capacity for medium work, including her past relevant work.  Accordingly, the ALJ concluded that plaintiff's disability ceased as of December 1, 1998. [AR at 11-17.]  When the Appeals Council denied review of the ALJ's decision, that decision became the final decision of the Commissioner. [AR at 2-3.]

In a previous action filed in this Court, the matter was remanded on January 27, 2003. [AR at 323-24.] A new hearing was held on March 30, 2004. [AR at 470-84.] Plaintiff was represented by counsel and testified on her own behalf.  On May 6, 2004, the ALJ again determined that

---

[1] Listing 6.02B provides as follows:
Impairment of renal function, due to any chronic renal disease expected to last 12 months (e.g., hypertensive vascular disease, chronic nephritis, nephrolithiasis, polycystic disease, bilateral hydronephrosis, etc.) With . . . Kidney transplant. Consider under a disability for 12 months following surgery; thereafter, evaluate the residual impairment.

1 plaintiff was not disabled as of December 1, 1998, and thus not entitled to further benefits. [AR at
2 315-21.]

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving social security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/
/
/

### A. THE INITIAL FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy; the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257. Plaintiff apparently was originally found disabled, as of December 4, 1989, at step three of the sequential evaluation.

### B. MEDICAL IMPROVEMENT

Once a claimant is found disabled, a presumption of continuing disability arises. See Bellamy v. Secretary of Health and Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985).

Although the claimant retains the burden of proof, this presumption shifts the burden of production to the Commissioner to produce evidence to meet or rebut this presumption. Id.

Disability benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment so that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983). Medical improvement is defined as any decrease in the medical severity of the impairment that was present at the time of the most recent medical decision favorable to the claimant, i.e., the most recent decision that the claimant was disabled or continued to be disabled. See 20 C.F.R. §§ 416.994(b)(1)(i) and (b)(2)(i).

To determine whether medical improvement has occurred, the Commissioner (or ALJ) compares the claimant's current condition with the condition at a comparison point in the past. See 20 C.F.R. § 416.994(b)(1)(vii). The comparison point date ("CPD") is the date of the most recent favorable medical determination. Id. The CPD can be the date the claimant was first found disabled, or a later date if a continuing disability review determined that the claimant was still disabled. See 20 C.F.R. §§ 416.994(b)(1)(i) and (b)(2)(i). The ALJ compares the claimant's condition at the CPD to the claimant's present condition to determine whether there has been improvement, based on symptoms, signs and laboratory findings.[2] Id. A temporary improvement does not warrant a finding of medical improvement. See 20 C.F.R. § 416.994(b)(2)(iv)(D). This comparison makes it necessary for both an ALJ and a reviewing court to review the evidence of a claimant's prior symptoms, signs, and laboratory findings. This comparison also requires knowledge of the basis for the prior favorable decision, including the impairments found disabling and the reasons for so finding. If no medical improvement has occurred, the claimant's disability does not cease. 20 C.F.R. § 416.994(b).

---

[2] See definitions at 20 C.F.R. § 416.928. "Symptoms" are the claimant's own descriptions of impairments. "Signs" are abnormalities that can be objectively observed and medically described apart from the claimant's subjective testimony. "Laboratory findings" are physical or psychological phenomena that can be shown through medically acceptable laboratory diagnostic techniques.

If medical improvement has occurred, the ALJ must next determine whether the medical improvement is related to the claimant's ability to work. Id. To do so, the ALJ compares the claimant's current residual functional capacity (as based on previously existing impairments) with the residual functional capacity at the time of the most recent favorable decision. 20 C.F.R. §§ 416.994(b)(1)(vii). If the Commissioner finds medical improvement that is related to ability to work, the next step is to consider the claimant's current impairments and determine whether these may, nonetheless, preclude substantial gainful activity. 20 C.F.R. § 416.994(b)(1)(v).

## C. THE SEVEN-STEP RE-EVALUATION

In determining whether to discontinue disability benefits, the Commissioner (or ALJ) applies the following sequential evaluation. See 20 C.F.R. § 416.994(b)(5).

> (1) If the claimant has an impairment or combination of impairments that meets or equals a listing, disability continues.
> (2) If the claimant does not meet or equal a listing, the ALJ will determine whether medical improvement has occurred.
> (3) If so, the ALJ will determine whether the improvement is related to ability to work (i.e., to residual functional capacity ("RFC")).
> (4) If no medical improvement -- or no improvement related to ability to work -- has occurred, disability continues.
> (5) If there has been medical improvement related to ability to work, the ALJ will determine whether all the current impairments, in combination, are "severe," and, if not, disability ends.
> (6) If the claimant meets the "severity" criteria, the ALJ will determine the current RFC, and, if the claimant is able to do past work, disability ends.
> (7) If the claimant remains unable to do past work, the ALJ will determine whether the claimant can do other work.

## D. THE ALJ'S APPLICATION OF THE SEVEN STEP RE-EVALUATION

At step one of the seven-step re-evaluation, the ALJ found that plaintiff currently suffers from a severe impairment involving the urinary system, but she does not have an impairment or combination of impairments that meets or equals the severity of an impairment in the Listings. [AR at 320.] At step two, the ALJ found that there was medical improvement in plaintiff's condition since December 4, 1989, and that this improvement was related to plaintiff's ability to work (step three). Thus, a finding that plaintiff's disability continued could not be made at step four. At step five, the ALJ determined that plaintiff's current impairment or combination of impairments is

severe. [Id.] The ALJ determined that despite plaintiff's current impairments, plaintiff has regained the residual functional capacity to perform the exertional requirements of medium work (step six), including her past work. [AR at 321.] Accordingly, the ALJ concluded that plaintiff's disability ceased as of December 1, 1998. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ (1) improperly rejected the opinion of plaintiff's treating psychiatrist; and (2) failed to appropriately consider lay witness testimony. For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

### A. THE EVIDENCE

At the April 5, 2000, hearing, plaintiff testified that she cannot speak English, and last worked in October, 1988, stuffing inserts into newspapers. [AR at 40.] Prior to that, she worked packing oranges for approximately 3 years. She testified that she could not then work because she felt both "mentally" ill and "internally" ill. She forgets things, and believes that there is something wrong in her stomach, which occasionally throbs. [AR at 41.] Her legs and knees become swollen for days at a time, and occasionally she is unable to bend her knees. Id. On a daily basis, her entire body is tired and she experiences neck pain, as well as occasional pain in her heels. [AR at 42-43.] Plaintiff testified that she is able to stand for approximately 45 minutes at a time, and then she needs to lie down and raise her legs up. She can walk slowly for up to two blocks before becoming fatigued. When she tried to lift approximately 50 pounds, something popped, and she had pain in her legs. She is able, however, to lift two gallons of milk, and sit for approximately one hour. [AR at 45.] Plaintiff lived at the time with her two daughters, who were then ages 15 and 14. They helped her with the cooking, the laundry and the shopping. [AR at 46.] Plaintiff listens to music and watches videos during the day. [AR at 47.] Plaintiff had been treated by Dr. Cottrell for approximately 3 years; she sees him approximately every 2 months. [AR at 43.]

1    Plaintiff's complaints included chronic low back pain, pain in her feet, ankles, hips and head, and that she tires easily and has no energy. [AR at 269, 270, 273, 280, 282.] Dr. Cottrell has opined that plaintiff's kidney transplant is "stable." [AR at 269, 270, 280, 282.] X-rays of plaintiff's lumbar spine taken on May 21, 1999, revealed a narrowing of the disk space at L5-S1. She was diagnosed with mild osteoarthritis at L5-S1. [AR at 285.]  Dr. Cottrell noted that plaintiff experienced pain upon straight leg raising in July, 1999.  [AR 269.]

Plaintiff's 15 year old daughter Naomi testified at the hearing that her mother's back problem results in instances when "she can't even move her legs" or "walk right." [AR at 50.] This occurs three times a week. Id. She also testified that plaintiff is a "very nervous person," meaning that "she panics easily" and starts crying because she has trouble learning English. [AR at 51.] She does not think that her mother is able to work. Id.  In an effort to discern plaintiff's level of functioning, the ALJ asked the daughter about her parents' attendance at school conferences. Naomi testified that before her father left the household, he was the parent that attended the teacher conferences at school. Since he left, plaintiff does not go to those conferences. [AR at 52.]

Plaintiff testified four years later at the March 30, 2004, hearing that only one of her children was then living with her. [AR at 474.] She does not feel that she is capable of working because she is "having more and more problems" with her body, including "a lot of pain," and is experiencing depression. [AR at 475.] The pain is in her back, goes all the way down to her feet, and penetrates to her chest. The right leg hurts most. She also has pain in her elbows. The pain is constant. [AR at 476-78.] Her doctor tells her to take Tylenol, but it does not take the pain away. [AR at 478.] She feels tired every day, and the level of fatigue is the same as it was four years earlier.  [AR at 479.] She can walk for 15 minutes, and can pick up a gallon of milk with both hands. She does not think she could work a full-time job and be at a job site for eight hours. [AR at 480.] She can be in a seated position for half an hour, and can stand for 15 minutes. She spends about 5 hours lying down during a typical eight hour period. [AR at 481.] Her depression makes her feel like crying, and makes her anxious. [AR at 482.]

In May, 1999, plaintiff was evaluated by Diane L. Cordrey, Ph.D., a clinical psychologist, who administered tests to plaintiff. [AR at 263-67.] Plaintiff reported that she is able to dress herself, take care of her personal hygiene and do personal chores, and handle her own affairs. She also handles her own finances, and can more about alone by traveling on the bus. Dr. Cordrey found no evidence of a mood disorder. Plaintiff was diagnosed as having a mild verbal and general memory impairment, but she did not show significant cognitive or emotional limitations regarding her ability to function in work-related situations. Dr. Cordrey opined that plaintiff "could sustain a regular activity for eight hours per day, five days a week with normal breaks and could concentrate adequately for this purpose." [AR at 267.]

**B.    REJECTION OF TREATING PHYSICIAN'S OPINION**

On November 24, 2003, a "Narrative Report" was prepared at Riverside County Mental Health, in which the individuals preparing the Report opined that plaintiff would be unable to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, and adapt to new or stressful situations. The Report contains a "doctor signature." [AR at 327.] Plaintiff contends that the ALJ improperly rejected these opinions, presented by a treating psychiatrist and by clinician Leonlida Machado, by erroneously concluding that this Report only reflected the clinician's opinion. As the Report was signed by a doctor, part of the ALJ's rationale for rejecting the opinions contained therein -- that a clinician is not a treating source and the opinion is thus worthy of only limited value -- is undercut. However, the ALJ did not rely solely on this reason to reject the Report. Instead, the ALJ also determined that the conclusions in the Report are not supported by objective evidence, are internally inconsistent with treatment notes from the same clinic, and are contradicted by an examining physician's opinions.[3]   [AR at 318.]

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

---

[3] The November 24, 2003, Report appears to contain the only medical opinions that plaintiff contends were improperly rejected. Joint Stipulation at 3-5.

9

(examining or consultative physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830. The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted). "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. Id. at 830-31.

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Opinions of a non-examining, testifying medical advisor may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 750 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "'A report of a non-examining, non-treating

10

physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'" Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

The reasons provided by the ALJ to reject the opinions of the treating psychiatrist in the Report are specific and legitimate, and are supported by the evidence. Plaintiff attended numerous counseling sessions at the Riverside County Department of Mental Health from as early as August, 2000, through August 22, 2003. Her response to the medications that were prescribed was generally termed as "good" (see, e.g., AR at 331-33, 335-38, 353, 361), she was often considered "well groomed" (see, e.g., AR at 330-33, 337, 350, 353), and her affect or mood was "good" or "full range." [See, e.g., AR at 331, 333, 335, 350.] In an Assessment Update completed in September, 2002, plaintiff's appearance, orientation, and speech were all within normal limits, her judgment was good and her insight fair, and her memory was intact. Although her mood was anxious, and her affect labile, with short attention and concentration, she had no suicidal ideations or intent. [AR at 338.] Plaintiff's sleep and appetite were reported in November, 2002, and March, 2003, as "good." [AR at 333, 335.] The ALJ correctly noted that the treatment reports do not support, and in fact contradict, the Report's conclusions. Further, as noted by the ALJ, the Report is at odds with Dr. Cordrey's findings that plaintiff's attention span "was appropriate for the specific tasks," her mood was "euthymic," only mild memory problems were noted, and she did "not evidence significant cognitive or emotional limitations regarding her ability to function in work related situations." Dr. Cordrey further opined that plaintiff could learn simple, repetitive and more complex manual skills, could interact appropriately with others, and can work independently and follow simple instructions. [AR at 265-67, 318.] These findings, supported by testing, do not support the more extreme conclusions in the Report, and form a proper basis for rejection of the Report by the ALJ. See Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002) (upholding ALJ's interpretation of conflicting medical evidence as it was supported by substantial evidence, in part because physician's unsupported statements were at odds with same physician's prior opinion that plaintiff could work).

In addition, the ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report. Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). See also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). The cursory nature of the Report in this case, regardless of its authorship, and with no basis for the conclusions therein, also makes the ALJ's reasons for rejecting the Report proper.

Finally, in finding that plaintiff does not have a medically determinable mental impairment, the ALJ also relied on the state agency physician's similar conclusion. [AR at 82, 318.] As that opinion is consistent with and supported by other evidence in the record, that reliance was proper. The ALJ further determined that there was "no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or a prolonged outpatient treatment. [Plaintiff] has neither required nor received extensive psychiatric treatment other than the use of mild anti-depressant medication." [AR at 318.] These conclusions are also supported by the evidence in the record. As specific and legitimate reasons -- supported by substantial evidence in the record -- were provided to reject the Report, the ALJ's decision must stand.

## C.     FAILURE TO PROPERLY CONSIDER LAY TESTIMONY

Judges may, "[i]n addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. § 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the

1  opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ
2  must consider. Sprague, 812 F.2d at 1231-32; see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.
3  1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering.... [T]his
4  is particularly true of witnesses who view the claimant on a daily basis..."). An ALJ's consideration
5  of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant
6  factor of his alleged inability to work and the allegation is not supported by objective medical
7  evidence in the file." SSR[4] 88-13; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). To
8  reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill,
9  12 F.3d at 919.

10  As noted by defendant, it is not entirely clear from the Joint Stipulation which lay witness testimony plaintiff contends was improperly rejected, as she does not specifically refer to any such testimony. Part of the confusion may be a result of the ALJ not specifying in his opinion which "testimony of . . . lay witnesses" and which "third party statements at Exhibit 2" he was referring to as being "interesting" but "not medically probative." [AR at 320.] However, the only lay witness testimony at either hearing was from plaintiff's daughter Naomi. The third party statements at Exhibit 2 consist of those of plaintiff's daughter Adriana.

17  In the opinion, the ALJ specifically rejected Naomi's testimony, finding that there was no medical evidence of any inability on plaintiff's part to get up or move her right leg, and that any back pain was controlled by over-the-counter medication. The ALJ correctly noted that the records show plaintiff can cook, wash dishes, use public transportation, and is "independent in self-care activities and in taking her medications." [AR at 142-53, 319.] The ALJ also commented that Naomi's testimony that her mother was nervous and upset about her inability to learn English was contradicted by Dr. Cordrey's report that plaintiff's language skills in Spanish were adequate, and

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

she could handle her own affairs. The ALJ thus extensively and accurately addressed Naomi's testimony, and gave reasons to reject it.

The ALJ also referred to the statements of Adriana (the ALJ makes multiple references to Exhibit 2 at pages 14-25, which contains Adriana's July, 1999, Daily Activities Questionnaire), and found that those statements contained evidence that plaintiff can care for herself and perform tasks both in and out of the home. These statements were bolstered by plaintiff's own statements of her ability to care for herself. [AR at 319.] Adriana indicated to the disability hearing officer that plaintiff can take the bus and cook, but cannot vacuum. Plaintiff's legs and feet swell, and her back hurts, even when sitting. Plaintiff has to stand, walk or lie down. She can lift objects that are not too heavy. [AR at 137.] Adriana wrote in her Daily Activities Questionnaire that her mother wakes up frequently to go to the bathroom, and has stress. She can still groom and dress herself, and cooks "when ever she feels able to." Adriana and her sister cook as well. She and her sister help plaintiff do the shopping. Plaintiff is able to wash dishes and fold clothes. Plaintiff goes out to doctors appointments, to do the grocery shopping, and to stores. She takes the bus when she goes out. Plaintiff supports Adriana and her sister "any way she can," and gives them advice. She tries to learn English, but does not remember what she learns. [AR at 148-53.] It was wholly proper for the ALJ to take into account the discrepancies between plaintiff's subjective complaints and the objective medical evidence, as well as plaintiff's daily activities. Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 559-600 (9th Cir. 1999). These inconsistencies between their statements and the objective evidence, as well as plaintiff's ability to function, are legitimate reasons to reject the testimony.

The ALJ "does not need to meet the impossible burden of mentioning every piece of evidence" presented to him. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991). As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). In Vincent, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision

1  that the plaintiff was not disabled. Id. Here, contrary to situation in Vincent, the ALJ discussed and
2  appropriately rejected all lay witness testimony. In any event, the medical evidence supports the
3  ALJ's determination that plaintiff is not disabled.

## VI.
## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for remand is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 24, 2005                                    /s/
                                                   PAUL L. ABRAMS
                                         UNITED STATES MAGISTRATE JUDGE